IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KARI SIMONSEN, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT and |
| vs. | ) | DEMAND FOR JURY TRIAL |
| | ) | in LINCOLN, NEBRASKA |
| THURSTON COUNTY SCHOOL | ) | |
| DISTRICT 87-0013 (d/b/a WALTHILL | ) | |
| PUBLIC SCHOOLS); KIRK AHRENDS, in | ) | |
| his individual and official capacities; SETH | ) | |
| SACKMANN, in his individual and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, by and through her attorney, and for her cause of
action against the Defendants states as follows:

1.     This is an action seeking redress for the violations of constitutionally and
statutorily protected rights guaranteed the Plaintiff by the Americans with Disabilities
Amendments Act; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701; Title
VII of the Civil Rights, as amended, 42 U.S.C. §1981, brought under 42 U.S. §1983, the
First Amendment of the United States Constitution, as raised through 42 U.S.C. § 1983, a
civil conspiracy between Defendant Seth Sackmann and Defendant Kirk Ahrends, in their
individual capacities, brought under 42 U.S.C. §1983 for deprivations and violations of
Plaintiff's First Amendment Rights, and the Nebraska Fair Employment Practices Act.

2.     Plaintiff is a resident of Nebraska.

3.     Defendant Thurston County School District 87-0013 (d/b/a Walthill Public
Schools) (hereinafter WPS) is a political subdivision operating within the State of
Nebraska and is a recipient of State and Federal funds.

1

4.      Upon further information and belief, nearly 96% of students who attend WPS are Native American and a significant majority of WPS students have a disability as that term is defined by the ADAAA, the Rehabilitation Act, and the Nebraska Fair Employment Practices Act.

5.      Upon information and belief and at all times alleged, Defendant Kirk Ahrends was the Superintendent of WPS until mid to late 2024 and was at that time replaced by Seth Sackmann.  It is believed that Ahrends mentored and/or assisted Sackmann in his new position for multiple months.  Prior to his promotion to Superintendent, Sackmann had served as WPS's Elementary School Principal (and Plaintiff's direct supervisor) at all times alleged herein.   At all times alleged herein, Defendants Ahrends and Sackmann were acting in their official and individual capacities and within the scope and course of their employment with WPS.

6.      At all times alleged herein, the customs, policies, practices, "edicts and acts" and/or the failure to train, supervisor or monitor the employees, officers, administrators, and/or elected officials of Defendant WPS resulted in the constitutional and statutory deprivation of Plaintiff's rights and the rights of disabled Native American students who have attended WPS since the 2017-2018 school year (and likely prior to the 2017-2018 school year).

7.      This Court has original jurisdiction over the federal statutory and constitutional claims and concurrent jurisdiction of the claims arising under Nebraska law.

8.      Plaintiff received her bachelor's degree in elementary education from Midland Lutheran College and thereafter obtained her graduate degree in Education

Administration from Concordia University.    At all times alleged, Plaintiff has held a Nebraska teaching certificate.

9.      Plaintiff commenced her employment with Defendant WPS in 2005 as a general education teacher.   The most recent position held by Plaintiff before her unlawful suspension was teaching 3rd grade.    Plaintiff also served as the union representative for WPS teachers prior to and at the time of her August 2021 suspension. Plaintiff's union representative position required her to advocate on behalf of WPS teachers and participate in negotiations with WPS teachers, administrators and the school board regarding the terms and conditions of employment for teachers employed by WPS.

10.      It is undisputed that Plaintiff's work performance was satisfactory.

11.      At all times alleged, Plaintiff was and is qualified for the position she holds at WPS.

12.      At all times alleged, a substantial number of WPS's Native American students were disabled and required an individualized education program (hereinafter "IEP"). An IEP is a written plan for providing educational services to disabled students. Federal and state law requires strict compliance with the IEP so disabled students received legally mandated educational services.

13.      Upon information and belief, WPS received additional (and specially earmarked) taxpayer funds to provide the legally required educational services to its disabled students.

14.      As will be fully described in the following paragraphs, Plaintiff repeatedly reported and opposed non-compliance with student IEPs for over a decade to a plethora of entities and individuals, including, but not limited to, WPS administrators, the

district's director of special education, the Nebraska Department of Education, the
district's school board, third parties placed and working at WPS, and numerous
employees of the school district.

15.    Plaintiff was closely associated with minority students with disabilities
who attended WPS.

16.    In August 2017, Kerri Mohnsen, a speech pathologist who was employed
by Educational Service Unit No. 1 (ESU 1), was placed at WPS to provide services to
special education students. Within days of arriving at WPS, Ms. Mohnsen discovered that
WPS was failing to provide statutorily mandated services and education to special
education students, most of whom were Native American.

17.    Ms. Mohnsen made complaints to her employer and WPS about this
illegal activity.

18.    In the fall of 2017, Plaintiff again reported to WPS administrators and
others that disabled Native American students were not receiving all educational services
mandated under law.

19.    After WPS and ESU No. 1 failed to take appropriate remedial action
regarding the failure to deliver special education services to students, Mohnsen filed
complaints with the Nebraska Department of Education (NE DOE) which detailed the
statutory violations related to WPS's failure to provide mandated education and services
to special education students, many of whom are Native American, and other related
matters. Mohnsen's complaints to the NE DOE, included, but were not limited to WPS's
failure to provide appropriate services required by law to special needs students, allowing
improperly licensed or credentialed staff to provide mandatory services to special needs

students, failing to properly document and record services allegedly provided to special needs students, failing to create and/or abide by statutorily mandated Individual Education Plans (IEPs) or §504 plans for special needs students, failing to provide reasonable accommodation to special needs students, and misappropriation of state and federal funds designated for services for special needs students and/or Native American students attending WPS.

20.    As part of its investigation into Ms. Mohnsen's complaints, the NE DOE interviewed Plaintiff in late Fall of 2017 or early Spring of 2018.  The plaintiff's contract with Defendant WPS did not require her to participate in the NE DOE investigation.

21.    During her interview with the NE DOE, the Plaintiff confirmed and corroborated the reported law violations related to WPS's failure to deliver mandatory education and related services to disabled Native American students.  The matters on which the Plaintiff spoke undisputedly involved matters of public concern.

22.    Ms. Simonsen also described during her NE DOE interview the egregious harassment that Ms. Mohnsen suffered at the hands of WPS administrators and employees due to Ms. Mohnsen's engagement in numerous protected activities. Reporting unlawful retaliation and participating in a state investigation regarding illegal activities involve matters of public concern.

23.    On or about March 15, 2018, the NE DOE issued its investigatory report regarding the aforementioned complaints against WPS.  The NE DOE found numerous violations by WPS, including, but not limited to: (a) WPS failed to provide special education and related services to children with disabilities in accordance with the students' IEPs; (b) WPS failed to make the students' IEPs accessible to those

professionals who needed to see the IEPs; (c) WPS failed to inform teachers and providers of their responsibilities related to the implementation of the students' IEPs; (d) WPS failed to include goals and a description of how student progress would be measured; (e ) WPS failed to routinely check the hearing aid(s) worn by student(s); (f) WPS did not review the IEPs in the manner required by law; and (g ) WPS had accepted state and federal special education funding but had failed to provide the mandatory services to disabled students as required by law even though the state and federal funding had been specifically earmarked for special education services.

24.     The NE DOE investigation also described numerous specific deficiencies of WPS Superintendent, Edward Stansberry, including, but not limited to, his failure to ensure compliance with state and federal special education laws and remissness in delivering disabled students education and related services to which they are legally entitled.

25.     As a result of the investigation, WPS was placed on probation and ordered to comply with a multitude of other remedial actions by the NE DOE in an attempt to cure the numerous deficiencies noted in the investigatory report.   Defendant WPS failed to timely remedy the deficiencies noted in the findings and report issued by the NE DOE.

26.     The NE DOE's interview of Plaintiff substantially contributed to the NE DOE's investigatory findings and conclusions against WPS and Mr. Stansberry.

27.     Following the issuance of the NE DOE report, WPS Superintendent Stansberry resigned his position effective prior to the commencement of the 2018-2019 school year.

28.    On or about April 19, 2019, the NE DOE filed a Petition against former WPS Superintendent Stansberry (and his professional license) alleging numerous law violations arising out of his alleged failure to provided legally mandated services to disabled WPS students.

29.    Thereafter, Edward Stansberry's professional license was suspended for one year by the Nebraska Department of Education.

30.    Defendant Ahrends was hired by WPS during the 2017-2018 school year and became WPS Superintendent in the summer of 2018 following Edward Stansberry's resignation.    Defendant Ahrends remained as WPS Superintendent until mid to late 2024.  Defendant Seth Sackmann, who had previously served as WPS Elementary School Principal and Plaintiff's first line supervisor, was promoted to WPS Superintendent in mid to late 2024.    Upon information and belief, Defendant Ahrends remained employed by WPS even after Defendant Sackmann was promoted to Superintendent.

31.    Upon information and belief, Defendant Ahrends has maintained a very close personal and professional relationship with Ed Stransberry throughout his employment with WPS.

32.    Upon information and belief, Defendant Ahrends frequently consults with Mr. Stansberry about matters related to WPS.  Defendant Ahrends relies heavily on Stanberry's advice in performing his superintendent duties at WPS.

33.    Plaintiff's colleague, Kerri Mohnsen, suffered egregious discrimination due to her close association with disabled Native American students and was retaliated after engaging in numerous protected activities.

34.    On June 20, 2019, on behalf of Kerri Mohnsen, the undersigned attorney filed a federal lawsuit against WPS, ESU No. 1, Edward Stansberry, former WPS Superintendent, and two individuals employed by ESU No. 1. (See <u>Mohnsen v. ESU No. 1, WPS, Clark, Heimann, and Stansberry</u>, U.S. Dist. Ct. for Dist. of Neb., Case 4:19-cv-3061).

35.    The undersigned attorney deposed Plaintiff in the <u>Mohnsen v. ESU No. 1, et.al.</u> litigation on December 2, 2020.   Plaintiff's teaching contract with WPS did not require her to give deposition testimony in the <u>Mohnsen</u> lawsuit.

36.    After Plaintiff's deposition was scheduled, but before it was taken, Defendant Ahrends sought to intimidate and coerce Plaintiff's sworn deposition testimony by falsely telling Plaintiff that her testimony would determine whether WPS had to remain on the 2018 NE DOE remedial/corrective action plan that was imposed on WPS due to the deficiencies reported to the state agency (which were substantially corroborated by Plaintiff).

37.    The plaintiff was so unnerved and upset about Defendant Ahrends's threatening and coercive words and behavior that she asked WPS's attorney in the <u>Mohnsen</u> litigation to speak to Ahrends on her behalf and specifically request that he stop harassing her.   Ahrends's harassment of Plaintiff did not end.

38.    Defendant Ahrends's threatening and intimidating pre-deposition interactions with Plaintiff did not sway her from testifying truthfully on December 2, 2020.

39.    During Plaintiff's December 2, 2020 deposition, she testified, in relevant part, as follows:  That throughout her years of employment with WPS that: (1) WPS

routinely failed to deliver special education services to special education students, (2) WPS's Director of Education repeatedly (and falsely) stated that compliance with students' IEP minutes and plans were suggestions; not mandatory; (3) she had repeatedly reported to WPS administrators and others that special education students had been denied education required under their IEP plan and the law, (4) WPS administrators intimidated and sought to deter her from making complaints when and after she reported the IEP violations; (5) WPS failed to take action after she reported violations of IEP plans for seventeen (17) years, (6) even though her reports of IEP violations resulted in no action from the district, Plaintiff continued to report said violations on behalf of special education students; (7) WPS teachers, including but not limited to Becky Rogers, failed to deliver services and education required by law to special needs students; (8) the district wholly stopped providing any type of special education services to special needs students a week or two before the school year was over; (9) Mohnsen did not have any problems at WPS prior to her reporting and/or opposing the district's failure to deliver special education services to special needs students; (10) after Mohnsen reported to district administrators that WPS was non-compliant with IEP plans and/or had failed to deliver all educational minutes required under the IEP, former WPS Superintendent Ed Stansberry unilaterally changed the students' IEP plans in violation of the law; (11) WPS administrators and staff became overtly hostile and aggressive towards Mohnsen after she reported the district's failure to deliver special education services; and (12) Simonsen reported to NE DOE investigators that after Mohnsen reported the IEP violations, some WPS administrators and staff "were terrible to her…they treated her like crap." Her deposition testimony absolutely involved matters of public concern.

40. It is undisputed that Plaintiff's testified to numerous matters which were of public concern.

41. During her deposition, Plaintiff testified about the egregious harassment of Mohnsen by WPS administrators and employees. Such testimony also involved matters of public concern as they were not personal to Plaintiff, rather it detailed and corroborated WPS's illegal retaliation against a third-party whistleblower.

42. After Plaintiff engaged in one or more protected activities, Defendants Ahrends and Sethmann have engaged in a pattern of overtly hostile, dismissive, threatening, coercive, intimidating, and disapproving conduct directed at the Plaintiff due to her being a whistleblower, because she participated in protected activities related to the delivery of special education and related services to disabled students and the illegal retaliation directed towards the plaintiff and a third party, and due to her close association with disabled Native American WPS students.

43. As the teachers' union representative, Plaintiff regularly attended WPS School Board meetings and advocated on behalf of union members regarding matters which affected the terms and conditions of employment for union members who were employed as teachers at WPS. During said meetings, Defendant Ahrends routinely discussed the Mohnsen lawsuit in a disgusted, hostile, and angry manner. Often times Defendant Ahrends joked about Mohnsen and her lawsuit to the WPS school board. During these repeated discussions, members of the WPS School Board stared at Plaintiff in a disapproving, threatening, and hostile manner. Defendant Ahrends also routinely engaged in similar conduct when he attended WPS staff meetings.

44.     It was overwhelmingly apparent that Defendant Ahrends, and the WPS School Board possessed great dislike of and contempt for Mohnsen, her lawsuit, persons who corroborated Mohnsen's allegations, and persons who engaged in similar protected activities, such as the Plaintiff.

45.     As noted above, Defendant Ahrends and Edward Stansberry have maintained a very close personal and professional relationship throughout Ahrends's tenure with WPS.   Just weeks before Plaintiff's unlawful suspension, Plaintiff witnessed Defendant Ahrends and Stansberry standing closely together for an extended period of time at a local event, talking, laughing, and staring at Plaintiff in a highly menacing, disapproving and intimidating manner. The plaintiff felt intimidated and threatened by Ahrends's and Stansberry's conduct.

46.     The Mohnsen v. ESU No. 1, et.al. matter was resolved out of court in mid-August, 2021.  A joint stipulation for dismissal was filed on August 31, 2021.  (See Doc. #83, Case No. 4:19-cv-3061, U.S. Dist. Ct.  for Dist. of Neb).

47.     On the exact day that the joint stipulation for dismissal was filed in the Mohnsen matter, Defendant Ahrends gave Plaintiff a letter (which he had authored) which suspended Plaintiff from her teaching duties at WPS for the entire 2021-2022 school year. Upon information and belief, Defendant Seth Sackman participated in and collaborated with Defendant Ahrends in the unlawful decisions to suspend the Plaintiff from teaching, and bar her from school property and activities.  Prior to her suspension, Plaintiff had entered into a written teaching contract with the district for the duration of the 2021-2022 school year.  Plaintiff's suspension was discriminatory and retaliatory.

48.    The August 31, 2021 suspension letter also stated: "Based upon the nature of the charges, I believe it to be in your best interest and those of the school district that you be temporarily relieved of your duties…until a thorough investigation can be completed…."

49.    The August 21, 2021 suspension letter continued: "During the period of administrative leave, you will not be able to participate in school district activities, and are not to return to the school, whether during working hours or after, unless prior arrangements have been made with me. Your contacts during this period should be with or through me."

50.    Plaintiff's unlawful suspension has continued through the date of this filing even though the investigation was allegedly completed in either the Fall of 2021 or in April 2022.

51.    Pursuant to the suspension letter, Plaintiff was required to immediately return to Defendant Ahrends "any keys, electronic devices, or other school property that you have in your possession…."

52.    During the August 31, 2021 suspension meeting with Plaintiff, Defendant Ahrends told Plaintiff that her teaching contract would not be renewed for the 2022-2023 school year.

53.    Defendants' unlawful conduct deprived and/or substantially interfered with Plaintiff's constitutional right to associate with and advocate on behalf of union members and associate with students, employees, union members, and other persons present at WPS since August 2021. Defendants' unlawful ban, which prohibited Plaintiff

from participating in district activities and barred her from school property, was motivated by discriminatory and retaliatory reasons.

54.    A few days before her unlawful suspension, Plaintiff told Defendants Ahrends and Sackmann that she would continue to report violations of law and/or failure to deliver special education and related services to disabled students if she witnessed the same. The plaintiff's contract with WPS did not require her to make such reports.

55.    Additionally, in the days preceding her unlawful suspension, Plaintiff and two WPS teachers were discussing allegations that a WPS teacher, Becky Rogers, was failing to provide mandated services to special education students and had failed to comply with the disabled students' IEPs. The 2018 NE DOE report noted multiple deficiencies by WPS teacher Becky Rogers in failing to deliver mandatory special education services to disabled students. Plaintiff told her peers that she would speak out and/or continue to report the district's failure to deliver special education services to disabled students. The plaintiff's contract with WPS did not require her to make such reports.

56.    During the suspension meeting, Defendant Ahrends accused Plaintiff of attempting to terminate another employee.

57.    Defendant Ahrends's allegations are absurd and clearly a pretext for discrimination and retaliation. Plaintiff, a contracted WPS teacher, has no authority to fire another employee as hiring and firing decisions are at the sole discretion of WPS administrators and/or the school board. Plaintiff is neither a WPS administrator nor board member.

58.    Plaintiff adamantly denies engaging in any improper conduct.

59.    The unlawful suspension of Plaintiff constitutes an unlawful employment

action.  To be "adverse" the action need not always involve termination or even a

decrease in benefits or pay. *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8ᵗʰ Cir. 2015).

"[l]esser actions than demotion, suspension and termination can be adverse if their

cumulative effect cause an employee to suffer 'serious employment consequence' that

adversely affect or undermine his position."  *Shockency v. Ramsey Cnty.*, 493 F.3d 941,

948 (8ᵗʰ Cir. 2007) (citing *Kim v. Nash Finch Co*, 123 F.3d 1046, 1060 (8ᵗʰ Cir. 1997)).

"Changes in employment duties or conditions that cause material disadvantage to the

employee constitute adverse employment actions, but tangential changes do not."

*Shockency*, 493 F.3d at 948.

60.    In a November 22, 2021 letter sent by Plaintiff to Defendant Ahrends and

WPS School Board member, James Randol, she wrote many things, including, but not

limited to, the district's failure to provide special education services to disabled students,

her interview with and the NE DOE 2018 findings (that the district failed to deliver

mandatory services to special education students), the unlawful retaliation against

Mohnsen by the district after she engaged in protected activities, and the Defendants'

unlawful treatment of her.  The contents of her November 22, 2021 letter contained

matters of public concern.   Plaintiff's contract with WPS did not require her to write or

send the November 22, 2021 letter.

61.    In late November or early December 2021, Plaintiff filed six written

complaints with the NE DOE against Defendant Ahrends, Defendant Sackmann, and

other administrators and employees of WPS.  The complaints alleged, in part, continuing

violations by district employees in failing to provide mandatory educational services to

special needs students and the unlawful retaliation against third parties and addressed other matters of public concern.  The complaints also described the Defendants' continuing pattern of discrimination and retaliation against the Plaintiff.  Plaintiff's teaching contract with WPS did not require her to write or submit the NE DOE complaints.

62.    In December 2021, Plaintiff's attorney learned that WPS hired its long-time attorney, Steve Williams, to investigate Defendants' illegal treatment of Plaintiff. Upon information and belief, WPS has likely paid Mr. Williams's law firm hundreds of thousands of dollars to defend/represent the district in various lawsuits and legal matters over the years.   It is incomprehensible that a lawyer could conduct a fair and unbiased investigation of their own client; particularly a client who has paid in the past and was currently paying the firm for legal representation.  The conflict was glaringly apparent to all except Mr. Williams and the Defendants.

63.    This is not the first time that Mr. Williams has sought to investigate his own client's alleged illegal conduct. After Mohnsen reported WPS's illegal conduct to the school district, Mr. Williams (who was representing WPS at the time and had previously represented WPS), allegedly conducted 'an investigation' into his client's alleged illegal behavior.

64.    Not surprisingly, when he was deposed in the Mohnsen litigation, Mr. Williams testified that his investigation revealed no misconduct by his client, Walthill Public Schools.

65.    When the undersigned attorney learned that Mr. Williams again sought to investigate his client regarding Simonsen's serious allegations of illegal activity by his

15

client (WPS), she alerted Mr. Williams of his firm's alleged potential conflicts.  Due to the objections raised, Mr. Williams agreed to hire another person to conduct the investigation into Plaintiff's allegations.

66.    On or about February 15, 2022, Plaintiff participated in an investigation regarding Defendants' illegal actions.  This interview, and the information provided to the investigator, Chad Meisgeier, involved matters of public concern regarding WPS's denial of and/or failure to deliver education to its special education students (mandated by state and federal law), the illegal treatment of Mohnsen by WPS, and some matters personal to Plaintiff, including but not limited to discrimination and retaliation by the Defendants.  Plaintiff's teaching contract with WPS did not require her to participate in this investigation.

67.    During the course of the investigation, Plaintiff's counsel repeatedly requested that Mr. Meisgeier obtain from Mr. Williams highly probative, material and relevant documents in order to conduct a thorough investigation.

68.    Rather than being an independent investigator, Meisgeier failed to obtain the highly relevant requested documents as "WPS attorney said they were not relevant."

69.    A truly independent and competent investigator would have required WPS to produce the documents central to a full and fair investigation rather than relying on the defense attorney's statement that the documents were not relevant.

70.    During the alleged investigation, Plaintiff described the district's failure to deliver special education services to special needs students, the district's violations of the rights of special education students, the district's unlawful actions towards a third-party,

and the illegal conduct to which she had been subjected to by Defendants. These matters upon which the Plaintiff spoke included matters of public concern.

71.     Meisgeier's investigation was completed in April 2022.

72.     Plaintiff has not been reinstated to the classroom even though Defendant Ahrends's letter stated that the suspension would continue until the investigation was completed.

73.     On February 7, 2022, Plaintiff filed additional charges of discrimination and retaliation against WPS with the NEOC and EEOC. The administrative charges allege that WPS violated the Nebraska Fair Employment Practices Act, the ADA Amendments Act of 2008, and Title VII of the Civil Rights Act. These charges included matters of public concern such as the denial of special education and related services to disabled students, and retaliation against a third-party after she engaged in protected activities. The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

74.     On or about May 2, 2022, Plaintiff filed amended charges against WPS with the NEOC and EEOC which detailed the district's continuing acts of discrimination and retaliation in violation of state and federal law. These charges included matters of public concern such as the denial of special education services to disabled students, and retaliation against a third-party after she engaged in protected activities. The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

75.     On or about May 11, 2022, Plaintiff filed additional amended charges of discrimination and retaliation against WPS with the NEOC and EEOC. The amended

charges alleged that WPS violated the Nebraska Fair Employment Practices Act, the ADA Amendments Act of 2008, and Title VII of the Civil Rights Act.   These charges included matters of public concern such as denial of special education services to disabled students, and retaliation against a third-party after she engaged in protected activities.  The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

76.    On or about April 25, 2022, Plaintiff accepted a teaching contract with WPS for the 2022-2023 school year.  The contract provided, in relevant part, that she "agrees to devote full time, during days of school to his/her position in all respects, to diligently and faithfully perform the assigned duties as teacher to the best of his/her professional ability."

77.    Even though the 2022-2023 contract provided that Plaintiff commence work on August 8, 2022, Defendants have refused to recall Plaintiff from suspension. Plaintiff remained on suspension for the entire 2022-2023 school year and the ban which prohibits Plaintiff from participating in district activities and from entering onto district property remains in effect as of the date of this filing.

78.    Plaintiff filed a federal lawsuit against Defendant WPS and Ahrends on August 25, 2022 which alleged violations of the Americans with Disabilities Amendments Act, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701; Title VII of the Civil Rights Act, as amended, 42 U.S.C. §1981, the First Amendment of the United States Constitution, as raised through 42 U.S.C. §1983, and the Nebraska Fair Employment Practices Act.  (See U.S. District Court for the District of NE, Case No. 4:22-cv-03179, Doc #1)

79.     On or about January 31, 2023, Plaintiff filed administrative actions with the NEOC and EEOC alleging continuing acts of discrimination and retaliation by Defendants in violation of the ADAAA, Title VII, and the Nebraska Fair Employment Practices Act. These charges included matters of public concern such as denial of special education services to disabled students, and retaliation against a third-party after she engaged in protected activities.  The charges also included matters personal to the plaintiff such as ongoing discrimination and retaliation by Defendants.

80.     On or about May 1, 2023, the EEOC issued a determination and notice of rights.

81.     Plaintiff timely filed a first amended complaint in federal court against Defendants WPS and Ahrends on June 2, 2023.  The first amended complaint alleges violations of the state and federal laws referenced in ¶¶78-79.  (See U.S. District Court for the District of NE, Case No. 4:22-cv-03179, Doc #23)

82.     At the time the first amended complaint was filed as noted in ¶81, the NEOC charge referenced in paragraph 79 was pending before that state agency.

83.      Throughout the 2022-2023 school year, Plaintiff sent emails to Defendant Ahrends requesting information about the date that she should report to work in the classroom.  Defendant Ahrends has failed to respond to Plaintiff's inquiries.

84.     On April 10, 2023, Plaintiff entered into a teaching contract with WPS for the 2023-2024 school year.   The contract provides in relevant part that the teacher…" agrees to devote full time, during days of school to his/her position in all respects, to diligently and faithfully perform the assigned duties as teacher to the best of his/her professional ability."

85.    Pursuant to the 2023-2024 contract, Plaintiff should have commenced her teaching duties on or about August 7, 2023.

86.    Pursuant to an April 2023 email exchanged between counsel for the parties, it appears that WPS intended to maintain the 'status quo' and continue Plaintiff's suspension for the foreseeable future.  WPS's unlawful conduct may last for decades.

87.    As threatened by defense counsel in April 2023, Defendants have refused to return Plaintiff to the classroom to teach students since the 2023-2024 school year commenced in August 2023.

88.    On February 8, 2024, Plaintiff filed another federal lawsuit against Defendant WPS and Ahrends which alleges violations of the Americans with Disabilities Amendments Act, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701; Title VII of the Civil Rights Act, as amended, 42 U.S.C. §1981, the First Amendment of the United States Constitution, as raised through 42 U.S.C. §1983, and the Nebraska Fair Employment Practices Act.  (See U.S. District Court for the District of NE, Case No. 4:24-cv-3033, Doc #1)

89.    In March 2024, Plaintiff entered into a teaching contract with WPS for the 2024-2025 school year.   The contract provides in relevant part that the teacher…" agrees to devote full time, during days of school to his/her position in all respects, to diligently and faithfully perform the assigned duties as teacher to the best of his/her professional ability."

90.    Pursuant to the 2024-2025 contract, Plaintiff should have commenced her teaching duties on or about August 9, 2024.

91.     Defendants have refused to reinstate Plaintiff to her teaching duties as required by the 2024-2025 contract and have failed to rescind the ban prohibiting Plaintiff from attending school activities or entering onto school property.

92.     Due to the continuing law violations noted in preceding paragraphs, on or about September 13, 2024, Plaintiff filed additional NEOC and EEOC charges of discrimination and retaliation against WPS alleging violations of the Nebraska Fair Employment Practices Act, the ADA Amendments Act, and Title VII of the Civil Rights Act.   Plaintiff's NEOC and EEOC filings are protected activities under the aforementioned laws and are protected speech under the First Amendment of the United States Constitution.

93.     On October 28, 2024 and November 5, 2024, the U.S. Equal Employment Opportunity Commission and the U.S. Department of Justice, Civil Rights Division, respectively, issued Ms. Simonsen Notices of Right to Sue regarding the administrative charges that she had filed with the EEOC in September 2024.   On December 19, 2024, the NEOC issued an Administrative Dismissal and Notice of Right to Sue regarding the September 2024 charges filed by Simonsen.   Plaintiff has fulfilled the administrative prerequisites prior to filing this timely action.

94.     Upon information and belief, Defendants falsely told staff that Plaintiff was suspended as she had threatened to kill Ms. Rogers. Ms. Rogers is one of the WPS employees who denied special education services to disabled students per the NE DOE report.   Ms. Rogers is still employed by WPS even though she violated state and federal laws by depriving disabled students the education and related services to which they are legally entitled.

95.    Defendants' statements to staff are false and defamatory.  Not only did the Defendants unlawfully suspend the Plaintiff and have willfully refused to reinstate her (contrary to her numerous teaching contracts and the August 31, 2021 suspension notice) and banned her from school activities and school property, Defendants are making up vicious lies about her which has severely damaged her professional standing and reputation in the teaching community, and the community at large.

96.    As of the date of this filing, the suspension and ban precluding Plaintiff from participating in district activities and entering onto school property remains in effect. The suspension and ban have substantially interfered with Simonsen's ability to associate with and advocate for students, parents, employees, union members, and others present at and/or associated with the school district.

97.    The continuing suspension and ban have prevented Simonsen, who serves as the WPS teacher union representative, from engaging in union activities and/or advocating on behalf of union members.

98.    The numerous matters upon which Plaintiff spoke and wrote (as set forth herein) involve matters of public concern.   Defendants have willfully and intentionally punished and retaliated against the Plaintiff for her first amendment protected speech in a manner that would chill a person of ordinary firmness from continuing to engage in the activities in which Plaintiff has engaged.   Defendants' conduct has also infringed upon Plaintiff's constitutional right to associate with persons, students, employees, union members, and others present at WPS and has precluded her engagement in union activities on behalf of WPS teachers since the August 31, 2021 suspension.

99.   Plaintiff's statutory and constitutional rights that were violated by Defendants were clearly established at the time of the deprivation.

100.   Upon information and belief, Defendants Ahrends and Sackmann, in their individual capacities, engaged in a 42 U.S.C. §1983 civil conspiracy against the Plaintiff when they reached a 'meeting of the minds" and engaged in an overt act in furtherance of the conspiracy by depriving Plaintiff of and violating Plaintiff's constitutionally protected First Amendment Rights (which were clearly established at the time of the deprivation and violation).  Said actions constitute a civil conspiracy in violation of 42 U.S.C. §1983 and the First Amendment of the United States constitution.

101.   As noted in the preceding paragraphs, after Plaintiff engaged in one or more protected activities and spoke out on matters of public concern, Defendants substantially, egregiously, and willfully discriminated and retaliated against her by materially altering Plaintiff's job duties and responsibilities as well as her working conditions and banned her from district activities and school property.  Defendants' unlawful actions also prohibited Plaintiff from engaging in union representative duties on behalf of herself and other members of the teachers' union at WPS.

102.   Defendants have also discriminated and retaliated against Plaintiff due to her close association with disabled students and Native American students.

103.   At all times alleged herein, Defendant Ahrends, Defendant Sackmann and other WPS employees, agents, representatives, administrators, and/or officials were acting in the scope and course of their employment and/or office with the political subdivisions noted herein and were acting in concert with each other to deprive Ms. Simonsen of her constitutional and/or statutorily protected rights.

104.    As a result of Defendants' actions, Plaintiff has suffered injuries, including, but not limited to, past, present, and future, mental suffering, humiliation, inconvenience, emotional and mental anguish and distress, lost wages and the value of job-related benefits, damage to her reputation, her good name and her professional and personal standing in the community, and other special and general damages as allowed under law.

105.    At all times relevant, Defendant Ahrends and Defendant Sackmann acted recklessly or in willful disregard of the Plaintiff's statutory and constitutional rights. Punitive damages against the individually named defendants are appropriate under federal law and the United States Constitution.

## COUNT I

Plaintiff incorporates paragraphs 1 through 105 as if fully set forth herein.

106.    Defendants Ahrends and Sackmann have violated Plaintiff's right to free speech in contradiction of the First Amendment of the Constitution of the United States of America as raised through 42 U.S.C. § 1983.

107.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of the unlawful conduct of Defendants Ahrends and Sackmann.

108.    Punitive damages against Defendants Ahrends and Sackmann, in their individual capacities, are appropriate under federal law and the United States Constitution for their willful and/or reckless disregard of the Plaintiff's constitutionally and statutorily protected rights.  The plaintiff is not seeking punitive damages under the laws of the State of Nebraska.

## COUNT II

Plaintiff incorporates paragraphs 1 through 108 as if fully set forth herein.

109.    Defendants Ahrends and Sackmann have engaged in a civil conspiracy against the Plaintiff in reaching a 'meeting of the minds' and by carrying through on their actions to deprive Plaintiff of and/or violate Plaintiff's clearly established right to free speech in contradiction of the First Amendment of the Constitution of the United States of America and 42 U.S.C. §1983.

110.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of the unlawful conduct of Defendants Ahrends and Sackmann.

111.    Punitive damages against Defendants Ahrends and Sackmann, in their individual capacities, are appropriate under federal law and the United States Constitution for 42 U.S.C. §1983 conspiracy to deprive Plaintiff of and/or violate Plaintiff's constitutionally and statutorily protected rights.  The plaintiff is not seeking punitive damages under the laws of the State of Nebraska.

## COUNT III

Plaintiff incorporates paragraphs 1 through 111 as if fully set forth herein.

112.    Defendant Ahrends and Defendant Sackmann have violated Plaintiff's right to engage in union activities and advocate on behalf of union members and associate with students and other persons present at WPS since August 2021 in contradiction of the First Amendment of the Constitution of the United States of America as raised through 42 U.S.C. § 1983.

113.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of unlawful conduct of Defendants Ahrends and Sackmann.

114.     Punitive damages against Defendants Ahrends and Sackmann, in their individual capacities, are appropriate under federal law and the United States Constitution for their willful and/or reckless disregard of the Plaintiff's constitutionally and statutorily protected rights.  The plaintiff is not seeking punitive damages under the laws of the State of Nebraska.

## COUNT IV

Plaintiff incorporates paragraphs 1 through 114 as if fully set forth herein.

115.     Defendant WPS retaliated against Plaintiff after she engaged in the protected activities noted herein in violation of the Americans with Disabilities Amendments Act, the Rehabilitation Act of 1973, and the Nebraska Fair Employment Practices Act.

116.     Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

## COUNT V

Plaintiff incorporates paragraphs 1 through 116 as if fully set forth herein.

117.     Defendant WPS discriminated against the Plaintiff due to her close association with Native American students in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §1981, as raised through 42 U.S.C. Section 1983.

118.     Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

COUNT VI

Plaintiff incorporates paragraphs 1 through 118 as if fully set forth herein.

119.    Defendant WPS retaliated against the Plaintiff due to the protected activities in which she engaged on behalf of the Native American students and/or due to her close association with said students.   Said conduct violates Title VII of the Civil Rights Act, as amended, 42 U.S.C. §1981, as raised through 42 U.S.C. Section 1983, and the Nebraska Fair Employment Practices Act.

120.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

COUNT VII

Plaintiff incorporates paragraphs 1 through 120 as if fully set forth herein.

121.    Defendants Ahrends and Sackmann discriminated and retaliated against Plaintiff due to the protected activities in which she engaged on behalf of Native Americans students and/or due to her close association with said students.  Said conduct violates 42 U.S.C. §1981 as raised through 42 U.S.C. Section 1983.

122.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendants' unlawful conduct.

123.    Punitive damages against Defendants Ahrends and Sackmann are appropriate under the federal laws cited in Count VII given their willful and/or reckless disregard of the Plaintiff's constitutionally and statutorily protected rights.   The plaintiff is not seeking punitive damages under the laws of the State of Nebraska.

COUNT VIII

Plaintiff incorporates paragraphs 1 through 123 as if fully set forth herein.

124.    Defendant WPS retaliated against the Plaintiff after she engaged in the protected activities noted herein in violation of the Nebraska Fair Employment Practices Act.

125.    Plaintiff has suffered, and will continue to suffer, general and special damages as a result of Defendant WPS's unlawful conduct.

WHEREFORE, Plaintiff respectfully requests that this Court assume jurisdiction herein as to all counts alleged herein and grant the following relief:

a.    Declare Defendants' conduct to be violative of the Plaintiff's rights under the appropriate state or federal law(s) and/or the Constitution of the United States of America;

b.    Award Plaintiff past, present, and future general and special damages in amount to be determined by a jury of her peers and order that Plaintiff be reinstated to her teaching duties;

c.    Award the Plaintiff punitive damages against the individually named defendants as requested above;

d.    Enjoin the Defendants from engaging in any further illegal actions against the Plaintiff;

e.    Award Plaintiff pre-judgment interest on lost wages and value of lost job-related benefits and on compensatory damages.

f.    Award Plaintiff monetary damages as a tax set off for any damages awarded;

g.      Award Plaintiff taxable and non-taxable costs and reasonable attorney fees

and such other and further relief as the Court deems just and reasonable and appropriate

to correct the wrong done to the Plaintiff.

BY:     s/Kathleen M. Neary_____
        Bar Number:  NSBA 20212
        Attorney for Plaintiff
        POWERS LAW
        411 South 13th Street, Suite 300
        Lincoln, NE  68508
        Telephone: (402) 474-8000
        Fax: (402) 474 5006
        Email: kathleen@vpowerslaw.com


## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury in Lincoln, Nebraska.

s/Kathleen M Neary_____
Kathleen M. Neary    NSBA 20212